# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CAROLYN ALCORN, an individual, by herself and on behalf of all others similarly situated,<br><br>  Plaintiff,<br><br>  v.<br><br>CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, a foreign partnership, and DOES 1-50,<br><br>  Defendant. | Case No:<br><br>**COMPLAINT—CLASS ACTION**<br><br>**FOR VIOLATIONS OF WASH. REV. CODE § 19.86.020 AND UNJUST ENRICHMENT**<br><br>**JURY DEMAND** |

Plaintiff CAROLYN ALCORN files this complaint against Defendant CELLCO PARTNERSHIP d/b/a Verizon Wireless and DOES 1-50 on behalf of herself and all similarly-situated consumers. Plaintiff Alcorn previously filed a putative class action lawsuit with essentially the same substantive claims in Washington State Superior Court on November 17, 2009. Plaintiff Alcorn files this complaint on personal knowledge as to her own activities and on information and belief as to the activities of others, as follows:

## I.   NATURE OF THE CASE

1.   Verizon Wireless sells mobile phones and accompanying services.

2.   Verizon Wireless sells phones featuring keys that cause users to incur data usage charges they did not know they were incurring and did not intend to incur.

CLASS ACTION COMPLAINT - 1

**NEWMAN & NEWMAN,**
**ATTORNEYS AT LAW, LLP**

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

3. Verizon Wireless has instituted customer service practices designed to prevent customers from avoiding those unintended data usage charges.

4. Recently, a whistle blower from Verizon Wireless revealed Verizon Wireless's intentionally deceptive practices to a reporter for the New York Times, which printed an expose of those deceptive practices on November 12, 2009.

5. Having become aware of Verizon Wireless's deceptive practices by way of the New York Times expose, Plaintiff Carolyn Alcorn investigated her own Verizon Wireless invoices and learned that she had become a victim of those practices.

6. Accordingly, Ms. Alcorn brings this action on behalf of herself and all other similarly-situated Verizon Wireless users harmed by Verizon Wireless' deceptive data usage billing practices in the United States.

## II.    THE PARTIES

7. Plaintiff CAROLYN ALCORN is a Washington resident and a customer of Defendant Verizon Wireless.

8. Defendant CELLCO PARTNERSHIP is a partnership with its principal place of business in New Jersey. On information and belief, CELLCO PARTNERSHIP does business as "Verizon Wireless".

9. Plaintiff is unaware of the true names and capacities of defendants sued herein as DOES 1-50 and therefore sues those defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and on that basis alleges that each of the fictitiously-named defendants is responsible in some manner for the occurrences herein alleged, and that her injuries and those suffered by the class were proximately caused by such defendants. Those fictitiously-named defendants, along with Defendant CELLCO PARTNERSHIP, are referred to collectively herein as Verizon Wireless.

10. Each defendant aided and abetted the actions of the other defendants as set forth below, in that each defendant had knowledge of those actions, provided assistance

CLASS ACTION COMPLAINT - 2

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

and benefitted from those actions. Each of the defendants was the agent of each of the remaining defendants, and in doing the things hereinafter alleged, was acting with the course and scope of such agency and with the permission and consent of the other defendants.

### III. JURISDICTION AND VENUE

11. This Court has original jurisdiction over Plaintiff's claim for violations of the Federal Communications Act, 47 U.S.C. § 201, pursuant to 28 U.S.C. § 1331.

12. This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1332(d). This is a putative class action involving more than 100 class members, at least one member of the putative class is a citizen of a state different from Verizon Wireless, and the aggregate amount in controversy exceeds $5,000,000 exclusive of costs and interest.

13. This Court also has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to Plaintiff's Federal Communications Act claims over which this Court has original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

14. This Court has personal jurisdiction over Verizon Wireless because Verizon Wireless is authorized to do business in, and in fact does conduct substantial business in Washington. Verizon Wireless has sufficient minimum contacts with Washington, or otherwise intentionally avails itself of the markets within California, through collecting monies, entering into contracts and/or distributing its products and services in Washington to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

15. This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391(c) because the acts upon which this action is based occurred in part in this judicial district and Defendant Verizon Wireless received substantial compensation and profits from entering into agreements and selling its products and services to persons located in this judicial district which are the subject of this lawsuit.

CLASS ACTION COMPLAINT - 3

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

## IV.   FACTS

**A.   Verizon Wireless's Deceptive Data Usage Charge Practices**

16. Verizon Wireless routinely bills its customers, including Plaintiff Alcorn, for data usage charges in the amount of $1.99 each for accidental data usage caused primarily by the design of the phones Verizon Wireless sells.

17. Verizon Wireless sells phones that have dedicated keys for accessing services that require transferring data. Those keys are typically located in prominent, easy to access places on the device and surrounded by other keys.

18. A single press on such a key by a Verizon Wireless customer causes that customer to incur a minimum of $1.99 in data usage charges, even if that key press was accidental and actually caused only a nominal amount of data to be transferred to the user's mobile device across Verizon Wireless's network.

19. On or about November 12, 2009, the New York Times published an article describing Verizon Wireless's improper data charge practices (the "Article"):

> "Virtually every bill I get has a couple of erroneous data charges at $1.99 each—yet we download no data.
>
> "Here's how it works. [Verizon Wireless] configure[s] the phones to have multiple easily hit keystrokes to launch 'Get it now' or 'Mobile Web'— usually a single key like an arrow key. Often we have no idea what key we hit, but up pops one of these screens. The instant you call the function, [Verizon Wireless] charge[s] you the data fee. We cancel these unintended requests as fast as we can hit the End key, but it doesn't matter; they've told me that ANY data–even one kilobyte–is billed as 1MB. The damage is done."

20. A copy of the Article is enclosed herewith as Exhibit A.

21. On information and belief, a Verizon Wireless employee (the "Whistle Blower") contacted the author of the Article to divulge additional information about Verizon Wireless's improper data charge practices.

22. In the Article, the Whistle Blower describes how Verizon Wireless intends for its customers to incur accidental data usage fees:

> "The phone is designed in such a way that you can almost never avoid

CLASS ACTION COMPLAINT - 4

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

getting $1.99 charge on the bill. Around the OK button on a typical flip phone are the up, down, left, right arrows. If you open the flip and accidentally press the up arrow key, you see that the phone starts to connect to the web. So you hit END right away. Well, too late. You will be charged $1.99 for that 0.02 kilobytes of data. NOT COOL. I've had phones for years, and I sometimes do that mistake to this day, as I'm sure you have. Legal, yes; ethical, NO."

23.  The Whistle Blower explains that Verizon Wireless generates substantial revenue from customers charged for accidental key presses:

"Every month, the 87 million customers will accidentally hit that key a few times a month! That's over $300 million per month in data revenue off a simple mistake!

"Our marketing, billing, and technical departments are all aware of this. But they have failed to do anything about it—and why? Because if you get 87 million customers to pay $1.99, why stop this revenue? Customer Service might credit you if you call and complain, but this practice is just not right.

24.  The Whistle Blower further described internal steps Verizon Wireless had taken to minimize the ability of its customers to avoid paying unnecessary data charges:

"Now, you can ask to have this feature blocked. But even then, if you one of those buttons by accident, your phone transmits data; you get a message that you cannot use the service because it's blocked–BUT you just used 0.06 kilobytes of data to get that message, so you are now charged $1.99 again!

"They have started training us reps that too many data blocks are being put on accounts now; they're actually making us take classes called Alternatives to Data Blocks. They do not want all the blocks, because 40% of Verizon's revenue now comes from data use. I just know there are millions of people out there that don't even notice this $1.99 on the bill."

**B.   Verizon Wireless Deceptively Charged Plaintiff for Data Usage She Did Not Intend and Could Not Have Reasonably Expected to Incur.**

25.  Plaintiff Carolyn Alcorn contracted with Verizon Wireless for wireless services.

26.  Plaintiff Alcorn purchased a mobile phone from Verizon Wireless. Alcorn's mobile phone has the ability to access services provided by Verizon Wireless that require the transfer of data signals to her phone.

27.  Verizon Wireless provides Alcorn monthly invoices for wireless services.

28.  Without her knowledge or intent to use data services, Plaintiff Alcorn's

CLASS ACTION COMPLAINT - 5

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

monthly invoice occasionally reflects charges for data usage.

29. Those charges are typically in 1 megabyte increments.

30. Those charges are typically for $1.99, or a multiple thereof.

31. A copy of a recent invoice Plaintiff Alcorn received from Verizon Wireless indicating a charge of $1.99 for 1 megabyte of data is attached as Exhibit B.

**C.  There is No Enforceable Agreement to Arbitrate.**

32. Plaintiff Alcorn is informed and believes, and on that basis alleges, that Verizon Wireless asserts that her agreement to receive Defendant's products and/or services includes an arbitration clause (the "Arbitration Clause").

33. Plaintiff Alcorn is informed and believes, and on that basis alleges, that the Arbitration Clause purports to deprive her of the right to seek redress for Verizon Wireless's misconduct through a class action, and that it requires her to bear the costs of arbitrated her claims against Verizon Wireless in a jurisdiction other than her home jurisdiction.

34. Plaintiff Alcorn had no knowledge or reason to know of the Arbitration Clause at the time she contracted to receive Verizon Wireless's products and/or services and she did not negotiate the arbitration clause or have a meaningful opportunity to do so.

35. Even if Plaintiff Alcorn had the opportunity to negotiate the Arbitration Clause, she would have been unable to do so, as her bargaining power is greatly outweighed by Verizon Wireless's bargaining power.

36. To the extent that the Arbitration Clause constitutes a binding, valid contractual obligation, it is a contractual obligation of adhesion, and the manner in which it was formed was procedurally unconscionable.

37. The Arbitration Clause is also substantively unconscionable as it harsh, unfair, burdensome, shocking to the conscience, and effectively deprives Plaintiff Alcorn of any rights of redress against Verizon Wireless for its misconduct and any due process opportunity to be heard by an unbiased tribunal.

38. On information and belief, Verizon Wireless has inserted clauses into

CLASS ACTION COMPLAINT - 6

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

contracts with all of its wireless customers that purport to impose mandatory arbitration and a waiver of the right to participate in class action litigation. However, these contracts are contracts of adhesion drafted entirely by Verizon Wireless and provided to customers without opportunity to negotiate terms in a setting in which disputes between the contracting parties typically involve relatively small amounts of damages. Plaintiff Alcorn had neither the bargaining power nor the ability to negotiate for modified terms. Verizon Wireless relies on the mandatory arbitration and class action waiver provisions to shield itself from customers' use of the judicial system to seek redress for its improper conduct. In practice, the waiver virtually immunizes Verizon Wireless from responsibility for its misconduct. Such waivers are unconscionable under relevant state and federal law and should not be enforced.

39. The mandatory arbitration provision and the class action waited provision in these types of end-customer adhesion contracts have repeatedly been held unenforceable. *See, e.g.*, Ting v. AT&T Corp., 319 F.3d 1126 (9th Cir. 2003), *cert denied*, 540 U.S. 811 (2003); Discovery Bank v. Superior Court (Boehr), 36 Cal.4th 148 (2005); Ball v. Cingular Wireless, LLC, Case No. 04CC06353, Order Denying Motion of Defendant Cingular Wireless to Compel Arbitration and Stay Action (Cal. Super. Ct. Feb. 7, 2005 (wireless carrier's arbitration clause found unconscionable); Tamayo v. Brainstorm, USA, 154 Fed.Appx. 564 (9th Cir. 2005) (class action waiver in an arbitration clause contained in adhesion contract found unconscionable and invalid under California law).

### V. CLASS ACTION ALLEGATIONS

40. Numerous consumers have purchased mobile phones and services from Verizon Wireless in the United States.

41. Verizon Wireless sold its mobile phones and services in the United States through a standardized form agreement. The terms of the contract were not negotiable by the consumer.

42. Verizon Wireless used a common advertising campaign to promote its

CLASS ACTION COMPLAINT - 7

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

mobile phones and wireless services. The common advertising campaign used print, television, radio, and in-store advertising to promote Verizon Wireless's mobile phones and services.

43. None of Verizon Wireless's advertising disclosed that customers would be routinely charged for accidentally pressing buttons whose purpose could not be reassigned.

44. Numerous Verizon Wireless customers throughout the United States have been charged some $1.99 or some multiple thereof for accidental data usage caused by the design of Verizon's phones.

45. Plaintiff brings this action on behalf of herself and all others similarly situated, pursuant to the provisions of FED. R. CIV. P. 23(a)(1)-(4), 23(b)(2)-(3), and 23(c)(4)-(5), as the Court may determine to be applicable and appropriate, in connection with the proceedings to certify this action and its common questions as a class action. Plaintiff proposes the following class definition, subject to amendment as appropriate:

> All Verizon Wireless customers who have been charged a fee by Verizon Wireless as the result of accidentally pressing a button on a phone sold by Verizon Wireless with no intention to use the data services provided by Verizon Wireless in connection with that button (the "Class").

46. Alternatively, should it be found that any of Plaintiff's state law claims could not be certified on a national basis, Plaintiff seeks statewide subclasses (or groups of statewide subclasses) for these same persons.

47. The Class is so numerous and geographically dispersed that individual joinder is impracticable.

48. The Class alleges common claims for compensation or remuneration.

49. Plaintiff Alcorn's claim is typical of the claims for compensation or remuneration of the members of the Class who have been charged some $1.99 or some multiple thereof for accidental presses caused by the design of Verizon Wireless's phones.

50. This action is properly maintainable as a class action under FED. R. CIV. P.

CLASS ACTION COMPLAINT - 8

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

23(b)(1)(A), (b)(1)(B), (b)(2), and (b)(3).

51. Common issues of law or fact exist with regard to the claims of the Class including:

    a) Whether Verizon Wireless's advertising of its mobile phones and services was deceptive because it failed to disclose in a clear and conspicuous manner its policy for billing customers for accidentally pressing buttons on its phones;

    b) Whether Verizon Wireless engages in customer billing practices in which it bills customers a minimum of 1 megabyte of data (at $1.99) for accidental key presses which result in a transfer of only a nominal amount of data; and

    c) Whether Verizon Wireless's conduct violated the Washington Consumer Protection Act, RCW 19.86.020.

    d) Whether Verizon Wireless was unjustly enriched as a result of its improper conduct.

    e) Whether Verizon Wireless's conduct and practices violated the Federal Communications Act, 47 U.S.C. § 201 *et seq*.

52. The common issues described above predominate over issues affecting only individual members of the Class.

53. Plaintiff Alcorn is an adequate representative of the proposed Class. Her interests do not conflict with the interests of the Class and Plaintiff's counsel is competent to prosecute that Class claims and protect the interests of the Class.

54. A class action is a preferable method for adjudicating the claims of the members of the Class to millions of individual lawsuits because the claims of the Class members are small and there is little incentive for individual class members to control the prosecution of their own claims. Absent a class action, there is no effective means for individual Class members to obtain compensation or remuneration for their loss.

CLASS ACTION COMPLAINT - 9

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

## VI.   FIRST CAUSE OF ACTION
**(Violation of the Washington Consumer Protection Act, RCW Ch. 19.86)**

55. Plaintiff incorporate the allegations set forth in paragraphs 1 through 54 as though fully set forth herein.

56. Verizon Wireless routinely charges customers excessive amounts for accidental data usage caused by the design of its phones. Additionally, Verizon Wireless has taken steps to ensure its customers cannot entirely avoid paying it for such accidental usage.

57. Verizon Wireless's actions were unfair or deceptive acts or practices.

58. Verizon Wireless's deceptive conduct was committed in the course of Verizon Wireless's commerce.

59. Verizon Wireless's deceptive conduct deceived a substantial portion of the public.

60. Verizon Wireless's false and deceptive trade practices caused damage and injury to Plaintiff and the other members of the Class.

61. Plaintiff seeks equitable/injunctive relief and damages on behalf of herself and the other members of the Class for actual damages sustained as a result of Verizon Wireless's deceptive conduct in an amount to be determined at trial as well as the costs of this suit and reasonable attorneys' fees.

62. To the extent Plaintiff seeks monetary damages, Plaintiff also seeks treble damages on behalf of himself and each Class member for his or her actual damages sustained as a result of Verizon Wireless's unfair and deceptive acts in an amount to be determined at trial.

## VII.   SECOND CAUSE OF ACTION
**(Unjust Enrichment)**

63. Plaintiff incorporate the allegations set forth in paragraphs 1 through 62 as though fully set forth herein.

64. As a result of the conduct described above, Verizon Wireless has been and

CLASS ACTION COMPLAINT - 10

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

will be unjustly enriched at the expense of Plaintiff and the other members of the Class.

65. Specifically, Verizon Wireless' unfair and illegal actions as described above have resulted in it billing customers for unused data services.

66. Verizon Wireless should be required to disgorge the money retained as a result of Verizon Wireless' unjust enrichment.

## VIII.  THIRD CAUSE OF ACTION
### (Violation of Federal Communications Act, 47 U.S.C. § 201)

67. Plaintiff incorporate the allegations set forth in paragraphs 1 through 66 as though fully set forth herein.

68. Verizon Wireless is a common carrier engaged in interstate or foreign communication by wire or radio that provides communications service including mobile data and voice services to Plaintiff and the other members of the Class

69. Verizon Wireless' data charge practices as described herein are unjust and unreasonable in violation of 47 U.S.C. § 201(b).

70. As a result of its violations of 47 U.S.C. § 201(b), Verizon Wireless is liable to Plaintiff and the other members of the Class for the full amount of damages Plaintiff and the other members of the Class sustained in consequence of such violations together with their reasonable attorneys' fees and costs.

CLASS ACTION COMPLAINT - 11

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

## IX.   RELIEF REQUESTED

Plaintiff and the Class request the following relief:

1. A determination that this action is a proper class action maintainable pursuant to FED. R. CIV. P. 23(a), (b)(1), (b)(2), and/or (b)(3), and appointing Plaintiff as representative of the Class.

2. That the Court declare Plaintiff's claims against Verizon Wireless herein are not subject to mandatory arbitration.

3. That the Court enjoin Verizon from pursuing the policies, acts and practices described in this Complaint.

4. An order awarding Plaintiff and the Class:

   i) damages for Defendant's wrongful conduct;

   ii) treble damages under the Washington Consumer Protection Act; and

   iii) their reasonable attorneys' fees and costs;

in an amount to be established at trial.

5. Such other and further relief the Court deems just and proper.

## X.   JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable under FED. R. CIV. P. 38.

Dated this 31st day of December, 2009.

          Respectfully Submitted,

          **NEWMAN & NEWMAN,**
          **ATTORNEYS AT LAW, LLP**

By: _____
          John Du Wors, WSBA No. 33987
          Derek Linke, WSBA No. 38314

          Attorneys for Plaintiff

# Exhibit A

# The New York Times
## Pogue's Posts
### The Latest in Technology From David Pogue

**NOVEMBER 12, 2009, 12:29 PM**

### Verizon: How Much Do You Charge Now?

Starting next week, Verizon will double the early-termination fee for smartphones. That is, if you get a BlackBerry, Android or similar phone from Verizon, and you decide to switch phones before your two-year contract is up, you'll be socked with a $350 penalty (it used to be $175).

This fee drops slowly over time ($10 a month), but after two years, it's still $110. If the premise of the early-termination fee is to help Verizon recoup its original cost of the phone (see my analysis here http://bit.ly/pOkXz), shouldn't the fee go down to zero at the end of your contract?

This move doesn't help Verizon's reputation for steep pricing and aggressive gouging.

What bothers me more, though, is another bit of greedy nastiness that readers both inside and outside Verizon have noticed.

Here's one example, from a Verizon customer:

"David, I read your posts about how the cell carriers are eating up our airtime with those 15-second 'To page this person, press 5′ instructions, but I think Verizon has a bigger scam going on: charging for bogus data downloads.

"Virtually every bill I get has a couple of erroneous data charges at $1.99 each—yet we download no data.

"Here's how it works. They configure the phones to have multiple easily hit keystrokes to launch 'Get it now' or 'Mobile Web'—usually a single key like an arrow key. Often we have no idea what key we hit, but up pops one of these screens. The instant you call the function, they charge you the data fee. We cancel these unintended requests as fast as we can hit the End key, but it doesn't matter; they've told me that ANY data–even one kilobyte–is billed as 1MB. The damage is done.

"Imagine: if my one account has 1 to 3 bogus $1.99 charges per month for data that I don't download, how much are they making from their 87 million other customers? Not a bad scheme. All by simply writing your billing algorithm to bill a full MB when even a few bits have moved."

Verizon: How Much Do You Charge Now? - Pogue's Posts Blog - NYTimes.com 11/16/09 11:40 a.m.

Case 3:10-cv-03229-FLW-LHG Document 1    Filed 12/31/09    Page 15 of 18 PageID: 15

As it turns out, my correspondent is quite correct. My last couple of Verizon phones did indeed have non-reprogrammable, dedicated keys for those ridiculously overpriced "Get it now"-type services that I would never use in a million years.

At about the same time, I got a note from a reader who says he actually works at Verizon, and he's annoyed enough about the practice to blow the whistle:

"The phone is designed in such a way that you can almost never avoid getting $1.99 charge on the bill. Around the OK button on a typical flip phone are the up, down, left, right arrows. If you open the flip and accidentally press the up arrow key, you see that the phone starts to connect to the web. So you hit END right away. Well, too late. You will be charged $1.99 for that 0.02 kilobytes of data. NOT COOL. I've had phones for years, and I sometimes do that mistake to this day, as I'm sure you have. Legal, yes; ethical, NO.

"Every month, the 87 million customers will accidentally hit that key a few times a month! That's over $300 million per month in data revenue off a simple mistake!

"Our marketing, billing, and technical departments are all aware of this. But they have failed to do anything about it—and why? Because if you get 87 million customers to pay $1.99, why stop this revenue? Customer Service might credit you if you call and complain, but this practice is just not right.

"Now, you can ask to have this feature blocked. But even then, if you one of those buttons by accident, your phone transmits data; you get a message that you cannot use the service because it's blocked–BUT you just used 0.06 kilobytes of data to get that message, so you are now charged $1.99 again!

"They have started training us reps that too many data blocks are being put on accounts now; they're actually making us take classes called Alternatives to Data Blocks. They do not want all the blocks, because 40% of Verizon's revenue now comes from data use. I just know there are millions of people out there that don't even notice this $1.99 on the bill."

Well.

Look, it's very simple.

The more Verizon gouges, the worse it looks. Every single day, I get e-mail from people saying they're switching at the first opportunity, or would if they could. In time, the only people who will stay with Verizon are people who have no coverage with any other carrier.

Every company's dream, right? A base of miserable customers who stick with you only because they have no choice.

I realize that it's a business, that Verizon exists to make money. But the part I don't get is, why

Verizon: How Much Do You Charge Now? - Pogue's Posts Blog - NYTimes.com 11/16/09 11:40 a.m.

Case 3:10-cv-03229-FLW-LHG   Document 1   Filed 12/31/09   Page 16 of 18 PageID: 16

doesn't Verizon calculate the business cost of making customers unhappy? Surely some accountant can show that customer anger over these fees and dirty button tricks translate into negative corporate image, and therefore lost business.

Why wouldn't it be a hugely profitable move to start pitching yourself as the GOOD cell company, the one that actually LIKES its customers?

Here are four baby steps: (1) Let us bypass the 15 seconds of pointless voice mail instructions (Verizon is the only carrier who never responded to my campaign; see http://bit.ly/nIgE2).

(2) Make your early-termination fee reflect your actual cost, rather than being a profit center in its own right.

(3) If a data connection is obviously an error—under 10 seconds, say—don't bill for it.

(4) And for heaven's sake, quit imposing your own profit-center buttons on our cellphone designs. If we want to go online for $2 a megabyte, we'll find a way.

(UPDATE: A reader notes that his AT&T phone has exactly the same buttons and he gets charged exactly the same $2 for an accidental press. The $350 termination fee is a Verizon-only element, but the $2 accidental-data charges may actually be industry-wide. Readers: Can you confirm that it's the same deal on Sprint and T-Mobile?)

Copyright 2009 The New York Times Company | Privacy Policy |
NYTimes.com 620 Eighth Avenue New York, NY 10018

# Exhibit B

| Invoice Number | Account Number | Date Due | Page |
|---|---|---|---|
| 0782942746 | | 08/17/09 | 3 of 8 |

## Summary for Carolyn Alcorn: 206-

### Your Calling Plan

**Nationwide Basic 450 $39.99 1107**
$39.99 monthly access charge
450 monthly general allowance minutes
$.45 per minute after allowance

**M2M National Unlimited**
Unlimited Mobile to Mobile

**Unl Night & Weekend Min**
Unlimited OFFPEAK

**Pay As You Use Megabyte Data**
$1.99 per megabyte

**250 MSG Camera $5**
$5.00 monthly access charge
250 monthly PIX-FLIX allowance
250 monthly TXT Message allowance
$.10 per PIX-FLIX after allowance
$.10 per Message after allowance

### Charges

**Monthly Access Charges**
| | |
|---|---|
| Current Calling Plan 07/23 – 08/22 | 39.99 |
| 250 MSG Camera $5 07/23 – 08/22 | 5.00 |
| | **$44.99** |

**Usage Charges**
| | |
|---|---|
| Voice | .00 |
| Data | 1.99 |
| | **$1.99** |

**Verizon Wireless' Surcharges**
| | |
|---|---|
| Fed Universal Service Charge | 1.03 |
| Regulatory Charge | .07 |
| Administrative Charge | .92 |
| Effect of City Tax | 3.00 |
| | **$5.02** |

**Taxes, Governmental Surcharges and Fees**
| | |
|---|---|
| WA State E911 Fee | .20 |
| King Cnty 911 Surchg | .50 |
| WA State Sales Tax | 3.24 |
| King Cnty Rta Tax | .45 |
| Seattle City Sales Tax | 1.05 |
| | **$5.44** |

**Total Current Charges for 206-** **$57.44**

## Usage Charges

| Voice | | Allowance | Used | Billable | Cost |
|---|---|---|---|---|---|
| Calling Plan | minutes | 450 | 322 | --- | --- |
| Mobile to Mobile | minutes | unlimited | 108 | --- | --- |
| Night/Weekend | minutes | | 289 | --- | --- |
| **Total Voice** | | | | | **$.00** |
| **Data** | | | | | |
| Unbilled Usage from Previous Months | | | | | |
| Get It Now Downloads | downloads | --- | 1 | 1 | --- |
| **Current Data Usage** | | | | | |
| TXT Messaging | messages | 250 | 152 | --- | --- |
| PIX-FLIX Messaging | messages | 250 | 1 | --- | --- |
| Megabyte Usage | megabytes | --- | 1 | 1 | 1.99 |
| **Total Data** | | | | | **$1.99** |
| **Total Usage Charges** | | | | | **$1.99** |

View your bill and call details online for FREE. Sign in to My Verizon at www.verizonwireless.com.